285 N.J. Super. 469 (1995)
667 A.2d 379
PEARL McCARTHY, PETITIONER-RESPONDENT,
v.
QUEST INTERNATIONAL COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1995.
Decided November 27, 1995.
*470 Before Judges KING, LANDAU and KLEINER.
Joseph V. Wallace argued the cause for appellant (Hack, Piro, O'Day, Merklinger, Wallace & McKenna, attorneys; Mr. Wallace, of counsel and on the brief).
Edward B. Shinrod argued the cause for respondent (Goldberger, Seligsohn & Shinrod, attorneys; Mr. Shinrod, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Petitioner-respondent Pearl McCarthy was a bookkeeper for respondent-appellant Quest International Company (Quest). She was injured while participating in a tug-of-war during a company picnic. Following bifurcated hearings on liability and disability in the Division of Workers' Compensation, the judge of compensation first determined that McCarthy's injury was sustained by accident arising out of and in the course of her employment. Thereafter he found that she was entitled to temporary total disability benefits from May 5, 1991 through February 3, 1994, until she reached maximum benefit of treatment, returned to work, or further order *471 of the court. The order also provided for payment of certain medical expenses.
Quest's appeal asserts that McCarthy failed to sustain her burden under N.J.S.A. 34:15-7 to establish that the company-sponsored picnic was a regular incident of employment and produced a benefit to her employer beyond improvement in employee health and morale. Quest also challenges the holding that McCarthy was unable to work and in need of medical treatment.
Our review of the record satisfies us that there was sufficient credible evidence on the record as a whole to support both the liability and disability determinations. Accordingly, we affirm substantially for the reasons set forth by Judge Kumpf in his oral opinions of September 17, 1992 and February 3, 1994. See Close v. Kordulak Bros., 44 N.J. 589, 598-99, 210 A.2d 753 (1965); Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282, 650 A.2d 1025 (App.Div. 1994), certif. denied, 140 N.J. 277, 658 A.2d 301 (1995).
In affirming, we deem it appropriate to point out that the peculiar facts of this case, mostly undisputed, and as accepted by Judge Kumpf, markedly distinguish it from the typical case of a recreational injury suffered at a picnic or athletic contest conducted by a company for the morale, health and well-being of its employees.
"[T]here is no gainsaying that through its amendment [L. 1979, c. 283] of N.J.S.A. 34:15-7 the Legislature intended to tighten, clarify, or eliminate the availability of workers' compensation for injuries sustained during recreational or social activities." Sarzillo v. Turner Constr. Co., 101 N.J. 114, 120, 501 A.2d 135 (1985). As noted in Poswiatowski v. Standard Chlorine Chem. Co., 96 N.J. 321, 331 n. 2, 475 A.2d 1257 (1984), the joint statement accompanying the legislation enacted as L. 1979, c. 283, declared that the amended statute would exclude "most injuries sustained during recreational or social activities" (emphasis supplied).
Sarzillo teaches that the 1979 amendment was intended to except from compensability injuries or death resulting from recreational *472 activities "unless such activities (1) are a regular incident of employment and (2) produce a benefit to the employer beyond improvement in employee health and morale." Sarzillo, supra, 101 N.J. at 119, 501 A.2d 135; see also Cotton v. Worthington Corp., 192 N.J. Super. 467, 471 n. 2, 471 A.2d 56 (App.Div.), certif. denied, 96 N.J. 301, 475 A.2d 593 (1984).
The Supreme Court recognized that the two legislative criteria in N.J.S.A. 34:15-7, as amended, "accord substantially" with criteria delineated by Professor Larson in The Law of Workmen's Compensation.
The criteria enumerated by Larson for determining whether recreational activities occur within the course of employment are:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
[Sarzillo, supra, 101 N.J. at 121 n. 4, 501 A.2d 135 (quoting 1A Arthur Larson, The Law of Workmen's Compensation § 22, at 5-82 (1985)).]
These criteria, set forth in the 1985 treatise quoted in Sarzillo, supra, 101 N.J. at 121 n. 4, 501 A.2d 135, are retained in the 1995 revision. 1 Arthur Larson, Workmen's Compensation § 22, at 5-35 (Desk ed. 1995).
As with those cases that have explored the phrase, "in the course of employment" under N.J.S.A. 34:15-36, see, e.g., Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 103-104, 543 A.2d 45 (1988); Nemchick v. Thatcher Glass Mfg. Co., 203 N.J. Super. 137, 143, 495 A.2d 1372 (App.Div. 1985), a flexible, case-by-case analysis is here required to reconcile and reflect the overall remedial purposes of workers' compensation legislation and the purposes of the 1979 amendments.
In this case, the record as a whole sufficiently established the following facts accepted by Judge Kumpf:

*473 1. McCarthy was a full-charge bookkeeper for Quest, supervising four employees. Quest purchased a New York company, Unilever, and thereafter scheduled a joint company picnic during business hours by memorandum which indicated that attendance was required and that its purpose was to enable employees of the two companies to become familiar with each other.
2. McCarthy did not wish to attend, and asked the head of personnel whether attendance was mandatory. She was told that a salary deduction could be taken if she did not attend, and that, as a supervisor, she should set an example for other employees by going to the picnic.
3. The president formally addressed all the employees of both companies at the picnic. He later spoke with McCarthy, suggesting that she socialize with the other employees. Following up on this theme, the president then asked her specifically if she was going to participate in the tug-of-war for which the employees were then lining up. She took this as a mandate, and was injured while engaging in the event.
Judge Kumpf observed that the 1979 statutory amendments did not provide specifically for different treatment when an employee is ordered or assigned to participate in an activity, as did the Illinois legislature in 820 ILCS 305/11 (West 1993) (formerly Ill. Rev. Stat. ch 48, para. 138.11). In consequence, he concluded that the compulsion upon McCarthy to participate did not alone justify a finding that her injury arose out of and in the course of employment. He found, however, by reason of the merger of the two companies and the fact that Quest never before had sponsored a company picnic, that the main purpose for the outing was to enable the employees of the two newly-merged companies to get to know each other in order to foster a better working relationship among them. This, he concluded, "is a benefit to the employer beyond the health and welfare [sic][1] of the employee," thus distinguishing this case from one in which only the compulsion criterion is established.
As to the other criterion, he found that the picnic was an incident of the employment. In addition to its sponsorship and payment of all costs, Quest had directed its employees to attend, *474 shutting down its plant for the purpose. McCarthy, who did not wish to go, was informed that as a supervisor, she should set an example and attend. Further, the President urged her to engage in the various activities, which she had been avoiding, suggesting the tug-of-war in which she was injured. In light of these findings, Judge Kumpf concluded that the injury arose out of and in the course of her employment, because "[t]he employer so involved itself in the petitioner's engagement in the activity in which she was injured, contrary to her own desires, that engagement in the activity was an incident of her employment."
We agree with his assessment that the statutory criteria, interpreted in Sarzillo to track "substantially" the Larson criteria[2], have been satisfied, (see subparagraphs (2) and (3) of the Larson criteria, supra) and we find the present factual picture to be materially different from the morale-based recreation considered in cases such as Cotton.
Professor Larson's treatise explains the reason underlying similar holdings in various state courts:
The technical reason for these holdings is simply that, whatever the normal course of employment may be, the employer and his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?
The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired.
[1 Larson, supra, § 27.40, at 5-158 to -159].
As one court recognized, affirming a compensation commission award in Nichols v. Davidson Hotel Co., 333 S.W.2d 536, 543 (Mo. Ct. App. 1960), "corporate employees who fail to take `suggestions' made by corporate officers are apt to become ex-employees."
*475 Where the employer derives a benefit beyond worker morale and health from the atypical, but essentially directed, participation of its employee in an injury-producing recreational event, the injury may properly be deemed compensable under N.J.S.A. 34:15-7 upon appropriate case-by-case analysis.
Affirmed.
NOTES
[1] The language in N.J.S.A. 34:15-7 is "beyond improvement in employee health and morale." We think it clear in the context of his entire opinion that Judge Kumpf, a recognized authority on the 1979 amendments, was fully aware of the statutory text and was here merely paraphrasing.
[2] We note that the Larson criteria are set forth disjunctively, whereas the recreational injury criteria in N.J.S.A. 34:15-7 are expressed in the conjunctive. Here, as Judge Kumpf found, both criteria were met.